IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY ALLEN, #B43715, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 13-cv-00851-NJR |
| | ) |
| DAVID A. REDNOUR, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Anthony Allen, on behalf of himself and 54 other named plaintiffs, all of whom are inmates in the custody of the Illinois Department of Corrections, initiated this action for deprivations of their constitutional rights pursuant to 42 U.S.C. § 1983, based on incidents that occurred at Menard Correctional Center. The complaint (Doc. 1) was dismissed without prejudice because it failed to state a claim upon which relief could be granted (Doc. 78). It was also noted that the lead plaintiff, Anthony Allen, could not represent all plaintiffs and, therefore, the complaint was deemed filed only by Allen. A procedure was suggested for how to permit other plaintiff's to join the case, *if* Allen successfully amended the complaint.

Now before the Court is Plaintiff Allen's motion to amend (Doc. 107) and proposed amended complaint ("AC"). No motion was required, so the motion (Doc. 107) will be denied as moot, and the required preliminary review of the amended complaint will proceed pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

>    (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
>    > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>    >
>    > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **The Amended Complaint**

In addition to the large number of potential plaintiffs and similarly large number of named defendants, the amended complaint is relatively unwieldy. The amended complaint contains a narrative of events spanning two years and raising a myriad of constitutional claims against 52 named defendants (ranging from the governor and attorney general of Illinois, to Illinois Department of Corrections officials, to administrative officials and staff at Menard) and additional amorphous groups of defendants.

The claims and chronology of events are not presented in a clear, linear narrative. This Court is not required to address every claim that is made; rather, it must consider arguments strong enough to merit discussion. *See generally United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009). For these reasons, the amended complaint will be analyzed in broad terms, rather than attempting to breakdown the pleading into individualized claims. Any claims and defendants not addressed should be considered dismissed without prejudice.

Plaintiff's allegations fall into six broad categories: (1) conspiracy to retaliate; (2) equal protection; (3) conditions of confinement in segregation; (4) the denial of due process in connection with disciplinary actions; (5) grievances; and (6) price gauging in the prison commissary.

Plaintiff generally seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

## Discussion

### The Plaintiffs

The amended complaint is clearly brought only by Anthony Allen on his own behalf and without contemplation of other inmates joining the action.[1] Consequently, the possibility of the other 54 plaintiffs opting into this action has evaporated. Accordingly, all other plaintiffs must be dismissed and all motions filed to date by plaintiffs other than Anthony Allen will be denied as moot (Docs. 80, 84, 86, 87, 89, 98, 100, 101, 106, 108, 117 and 120).

### Conspiracy to Retaliate

Claims of retaliation and conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason,* 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006)). The allegations of conspiracy in the amended complaint are conclusory and are insufficient under the *Twombly* pleading standard.

The amended complaint is brought against 52 named defendants and numerous additional categories of unidentified defendants. Incidents occurring from May 2011 through July 2013 are described, and an ongoing violation specifically with respect to the conditions of confinement is suggested. The thread that allegedly ties Plaintiff's myriad of claims together is an assertion that all defendants conspired to retaliate against Plaintiff because he has a history of being a "troublemaker" who has filed administrative grievances and lawsuits regarding his conditions of confinement, and who helps other inmates do the same (*see* AC, pp. 2, 5, 8, 22, 38). A second possible motivation, according to Plaintiff, is that prison officials continue to believe that he is a

---

[1] Allen is the only identified plaintiff in the case caption, and his allegation of an overarching conspiracy to retaliate against him for his legal activities (discussed below) confirms that the claims raised are specific to Allen and not to the other 54 plaintiffs named in the initial complaint.

gang leader, when Plaintiff disavowed his gang affiliations as early as 2003 (*see* AC, pp. 5, 7).

"To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304–05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dept.,* 197 F.3d 256, 263 (7th Cir.1999)).

The amended complaint does not describe a meeting of the minds; rather, Plaintiff only offers a general causal chain of events. For these reasons, all allegations regarding a conspiracy will be dismissed without prejudice.

As pleaded, the overarching retaliation claim also fails. "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). Although only notice pleading is required, it is helpful to understand that to prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012) (internal citations omitted).

Retaliation for filing a grievance violates the First Amendment (*Id.*), as does retaliation for filing lawsuits (*Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005)). Also, retaliation for Plaintiff's attempts to help other inmates or to collectively discuss prison issues with other inmates is protected by the First Amendment, although in the

prison setting, security concerns can trump First Amendment rights to speech and association. *See generally Westefer v. Snyder*, 422 F.3d 570, 574-75 (7th Cir. 2005) (distinguishing between free speech and gang activity). The issuance of disciplinary reports, placement in severe conditions of confinement and the denial of privileges as alleged, individually or together, could reasonably be said to have a chilling effect and deter future First Amendment activity. Nevertheless, the retaliation allegations are too vague and conclusory to state a colorable claim.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Although a chronology of events is circumstantial evidence that can support a retaliation claim (*see generally Peele v. Burch*, 722 F.3d 956, 960 (7th Cir. 2013)), the complaint is devoid of any other allegations that would make the retaliation claim plausible, rather than merely possible, as required under the *Twombly* standard. The very fact that there are 52 individual defendants and additional group-defendants—and no conspiracy— highlights the conclusory nature of Plaintiff's retaliation claim. Therefore, any and all claims of retaliation will be dismissed without prejudice.

**Equal Protection**

According to the amended complaint, in May 2011, Plaintiff Allen initiated a dialogue with Warden Rednour regarding the conditions of confinement in the west cell house. On May 26, 2011, Plaintiff and other inmates gathered on the recreational yard to discuss what Rednour had said to Plaintiff, their grievances regarding the west cell house, and what they could collectively do to keep the west cell house off lockdown status, thereby regaining privileges. Mistaking the gathering as a gang meeting, Sgt. Hasemeyer and C/O Coleman took the ID's of

the black inmates, but not of white inmates who were also gathered in the yard. Later that day, "a ticket by C/O Hudson came in [Plaintiff's] cell," charging Plaintiff with unauthorized organizational activity.

The Equal Protection Clause of the Fourteenth Amendment forbids a state to "deny to any person within its jurisdiction the equal protection of the laws." U.S.CONST. amend. XIV, § 1. It is well-established that any official action which treats a person differently because of his race or ethnic origin is "inherently suspect." *Fisher v. University of Texas at Austin,* 133 S.Ct. 2411, 2418 (2013) (citation omitted). An equal protection claim against Sgt. Hasemeyer, C/O Coleman and C/o Hudson shall proceed. This Claim shall be designated as "Count 1."

### Conditions of Confinement in Segregation

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Most recently, in *Townsend v. Cooper*, __F.3d__, 2014 WL 3511731 *7 (7th Cir. July 17, 2014), the Seventh Circuit observed that the denial of hygiene items, a lack of heat, clothing, sanitation and bedding, alone or in combination, and depending of the duration of the conditions, can violate the Eighth Amendment.

Plaintiff Allen and the other inmates who received disciplinary reports on May 26, 2011, were placed in locked segregation cells. According to Plaintiff, his segregation cell, N2-C2, had no lights, water, electricity or windows, the toilet and walls were filthy, and the cell smelled of excrement. He was also denied yard privileges for a year. It appears that Plaintiff has stayed in that segregation cell from May 26, 2011, to the present. During that time, Plaintiff also suffered a very long list of what can only be characterized as *de minimis* harms, such as missing a meal on

May 26, 2011, being promised but never receiving a wash cloth on a particular day, not being permitted to use his facial trimmers, having to go five days without a shower on one occasion, and having no television. Individually, as pleaded, these slights do not offend the Constitution, but taken together, and considering the duration of some of the enumerated conditions, they amount to an overarching Eighth Amendment claim that shall proceed as "Count 2."

The majority of the conditions discussed are not attributed to any particular defendant. Combing through the amended complaint, there are sufficient allegations of personal involvement relative to defendants C/O Phelps and Sgt. Whithall, who refused to move Plaintiff to a different cell (*see* AC, p. 8). Insofar as the allegations reflect a practice at Menard of subjecting segregation inmates to unconstitutional conditions of confinement, the policy is not attributed to any particular defendant in the prison administration or the Illinois Department of Corrections.

Plaintiff seeks injunctive relief, therefore, the current warden of Menard, Kim Butler, will be considered a defendant to Count 2, but only in her official capacity for purposes of injunctive relief. *See Gonzalez v. Feinerman*, 663 F.3d 3111, 315 (7th Cir. 2011) (the proper defendant in a claim for injunctive relief is the government official responsible for ensuring such a remedy is carried out). Butler happens to already be among the many named defendants, although she only recently became the warden.

**<u>Due Process</u>**

Plaintiff contends that he was denied procedural due process in connection with the initial hearing on his disciplinary ticket for organizational activity on the yard. More specifically, he contends Adjustment Committee procedures were not followed. The narrative of perceived constitutional flaws is muddled. In general, the amended complaint indicates that the

disciplinary report stated the charge, but not the evidence relied upon in making the charge; that Plaintiff was not granted a requested extension of time to prepare for the hearing; and that Plaintiff does not believe the Adjustment Committee, composed of Michael A. Mifflin and Mario R. Jalivay, performed an adequate investigation and, therefore, its conclusion was not adequately supported. There is an indication that Plaintiff does not think the Committee relied upon statements from the "right" people.

The Due Process Clause of the Fourteenth Amendment, by its very terms, applies only to deprivations of life, liberty and property. *See Marion v. Radtke*, 641 F.3d 874, 875 (7th Cir. 2011). Assuming at this point that Fourteenth Amendment protections are triggered (based on the conditions of confinement at issue in Count 2), due process only requires that the inmate receive "advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decisionmaker, and a written explanation, supported by at least 'some evidence' in the record, for any disciplinary action taken." *Langstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006) (citations omitted); *see also Wolff v. McDonnell,* 418 U.S. 539 (1974).[2]

To begin with, no substantive or procedural due process right exists for writing a false disciplinary report and/or malicious prosecution. *See Langstrom*, 463 F.3d at 625. Moving on to the disciplinary hearing, the mere violation of Committee procedures is insufficient to state a colorable Fourteenth Amendment claim. Plaintiff indicates that there was evidence to support the Committee's conclusion, but he would have had other witnesses' statements considered (*see* AC, pp. 10, 13). Regarding the Committee's alleged failure to investigate to Plaintiff's

---

[2] The Court cannot, based on the amended complaint, discount the possibility that Plaintiff lost good-time credits. However, based on the pleading, the Court will only recognize a procedural dues process claim. Under *Sandin v. Conner*, 515 U.S. 472 (1995), a prisoner is entitled to procedural due process protections before segregation imposing "an atypical and significant hardship" (*Id*. at 486), which includes "conditions materially more onerous than 'the ordinary incidents of prison life.' " *Marion,* 641 F.3d at 875 (quoting *Sandin*, 515 U.S. at 484).

satisfaction, even in a *criminal* prosecution, there is no affirmative duty for police to investigate. *See generally Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012) (citing, *e.g., Town of Castle Rock v. Gonzales,* 545 U.S. 748 (2005)). For example, although polygraph tests are admissible in disciplinary proceedings (*see*, e.g., *Lenea v. Lane,* 882 F.2d 1171 (7th Cir.1989)), *Wolff* does not require that an inmate charged with a disciplinary violation be given a polygraph test. The Court is unable to discern a viable basis for a colorable due process claim related to the initial hearing, but the possibility of a viable claim cannot be wholly dismissed—particularly because the amended complaint indicates that the initial disciplinary conviction was overturned (*see* AC, p. 14). Therefore, dismissal of this aspect of Plaintiff's due process claim will be without prejudice.

    The Administrative Review Board ordered that the disciplinary report be rewritten and reheard by the Adjustment Committee. Plaintiff contends that process was not completed within the 14-day time frame dictated by prison regulations. By Plaintiff's calculation, the process should have been completed by September 3, 2011, but the ticket was not rewritten until September 5, 2011. Moreover, the Committee, Michael A. Mifflin and Jason P. Vasquez, did not hold an additional hearing, and Plaintiff was summarily found guilty. Based on the alleged failure to provide Plaintiff with a copy of the new disciplinary charge and failure to provide him with an opportunity to present evidence, a colorable claim has been stated—at least a claim that cannot be discounted at this early juncture. With that said, Vasquez is not a named defendant. Therefore, the due process claim shall proceed only against Michael A. Mifflin, and it shall be designated as "Count 3."

**Grievances**

After Plaintiff's first disciplinary conviction was expunged, he wrote multiple grievances attempting to get the disciplinary report rewritten and reheard promptly, apparently to no avail. However, as he later learned, the report had been rewritten and the Adjustment Committee had made its decision without Plaintiff's knowledge.

Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause of the Fourteenth Amendment; therefore, the alleged mishandling of grievances by persons who otherwise did not cause or participate in the underlying conduct does not violate the Fourteenth Amendment. *See Owens v. Hinsley*, 635 F.3d 950, 953 -54 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). Those who did not address Plaintiff's grievances, or who did not ensure that Plaintiff received the rewritten disciplinary report and new hearing at issue in Count 3, were not involved in the actual denial of due process. Consequently, any and all claims relative to Plaintiff's grievances regarding the second disciplinary proceedings will be dismissed with prejudice.

**Commissary Price Gauging**

The amended complaint contains a lengthy discussion of a perceived Illinois Department of Corrections policy and practice of price gauging inmates on various commissary items, charging a greater markup than is permitted under state law (*see* AC, pp. 32-37).

Overcharging for commissary items does not independently violate any constitutional right. *See, e.g., Starks v. Powers,* No. 03–1962, 2004 WL 1380530, at *1 (7th Cir. June 17, 2004) (noting that district court had dismissed a claim of commissary overpricing as frivolous). Therefore, all claims regarding price gauging will be dismissed with prejudice.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to amend the original complaint (Doc. 107) and motion for status (Doc. 125) are **DENIED AS MOOT**. The Clerk of Court is **DIRECTED** to file the proposed amended complaint that was submitted in connection with Doc. 107.

**IT IS FURTHER ORDERED** that, for the reasons stated, all plaintiffs except Anthony Allen are **DISMISSED** without prejudice; accordingly, all motions filed to date by plaintiffs other than Anthony Allen (Docs. 80, 84, 86, 87, 89, 98, 100, 101, 106, 108, 117 and 120) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that all claims of an overarching conspiracy are **DISMISSED** without prejudice; and all claims of a conspiracy to retaliate against Plaintiff in violation of the First Amendment are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that all claims that Plaintiff was denied due process relative to his first disciplinary proceedings are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that all claims regarding Plaintiff's grievances aimed at commencing the second disciplinary proceedings are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that all claims regarding commissary price gauging are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the following claims shall proceed:

**Count 1:** **SGT. HASEMEYER, C/O COLEMAN and C/O HUDSON denied Plaintiff the equal protection of the law when Plaintiff was issued a disciplinary report based on his race, in violation of the Fourteenth Amendment;**

> **Count 2:** C/O PHELPS and SGT. WHITHALL (as well as WARDEN KIM BUTLER in her official capacity and for purposes of any injunctive relief that may be ordered) subjected Plaintiff to conditions of confinement that violate the Eighth Amendment; and
>
> **Count 3:** MICHAEL A. MIFFLIN denied Plaintiff due process in connection with the second disciplinary proceeding, in violation of the Fourteenth Amendment.

The Clerk of Court is **DIRECTED** to correct the record to spell the Defendants' names as they have been spelled in the above three counts. All other Defendants are **DISMISSED** without prejudice.

The Clerk of Court is **DIRECTED** to prepare for Defendants **SGT. HASEMEYER, C/O COLEMAN, C/O HUDSON, C/O PHELPS, SGT. WHITHALL, WARDEN KIM BUTLER and MICHAEL A. MIFFLIN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file

or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff.

Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 29, 2014**

*Nancy J. Rosenstengel* (Digitally signed by Nancy J Rosenstengel, Date: 2014.07.29 09:29:53 -05'00')

**NANCY J. ROSENSTENGEL**
**United States District Judge**